2012 WY 64

**Earl D. WALLACE and Nawana V. Wallace, Appellants (Defendants),**

v.

**PINNACLE BANK–WYOMING, Appellee (Plaintiff).**

**No. S–11–0230.**

Supreme Court of Wyoming.

May 4, 2012.

---

Representing Appellants: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Representing Appellee: Michael Messenger and Curtis Cheney of Messenger & Jurovich, P.C., Thermopolis, Wyoming. Argument by Mr. Cheney.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Earl D. Wallace and Nawana V. Wallace (the Senior Wallaces) borrowed $15,789 from Pinnacle Bank–Wyoming (Pinnacle) to finance a vehicle the Senior Wallaces purchased for their son and his wife (the Junior Wallaces). Although the Senior Wallaces borrowed the money in their own names and agreed to make the payments on the loan, the collateral for the loan was the vehicle they bought for and titled in the Junior Wallaces' names. To that end, the Junior Wallaces signed a Third Party Security Agreement pledging the vehicle as collateral.

[¶ 2] The day following the loan transaction, the Junior Wallaces filed a bankruptcy petition. During the course of the bankruptcy, the bankruptcy trustee seized and eventually sold the vehicle to benefit the bankruptcy estate. The Senior Wallaces thereafter stopped making payments on the loan.

[¶ 3] After making demand for payment, Pinnacle filed a complaint in district court seeking damages in the amount of the principal due on the note together with accrued interest, late fees, and attorney fees. The Senior Wallaces contended that because Pinnacle had not taken sufficient steps to protect the vehicle from seizure by the bankruptcy court, the Senior Wallaces no longer had any obligation to repay the loan. The district court rejected the defenses asserted by the Senior Wallaces and granted Pinnacle's motion for summary judgment. We affirm.

## ISSUES

[¶ 4] The Senior Wallaces present the following issues on appeal:

1. Whether Appellee is barred from collecting from Appellants due to the application of the doctrine of avoidable consequences?

2. Whether Appellants' loan obligation was discharged by a supervening frustration?

3. Whether Appellee's impairment of the collateral securing the loan precludes it from collecting on the loan?

4. When Appellee transferred its lien to the Bankruptcy Trustee, was Appellee no longer the proper party in interest to collect on the loan obligation?

5. Whether the failure to provide Appellants with notice of the sale of the collateral should have barred Appellee's suit?

## FACTS

[¶ 5] On Saturday, August 22, 2009, the Senior Wallaces purchased a 2009 Nissan Versa from a Riverton, Wyoming, automobile dealership. They paid for it in full with a check in the amount of $15,779, and then on Monday, August 24, 2009, they borrowed $15,789 from Pinnacle, a Thermopolis, Wyoming, bank, to cover the cost of the vehicle. In furtherance of the loan, the Senior Wallaces signed a document entitled "Note, Disclosure, and Security Agreement" (Loan Agreement).

[¶ 6] The Loan Agreement specified that the purpose of the loan was to provide a vehicle for the Senior Wallaces' son. To this end, during the meeting with the Pinnacle loan officer that handled the transaction, the auto dealership was contacted and asked to re-issue the Nissan's ownership documents in the Junior Wallaces' names. The dealership complied and issued a "Dealer Reassignment and Odometer Statement," dated August 22, 2009, in the Junior Wallaces' names and signed by the Junior Wallaces.

[¶ 7] Through the Loan Agreement, the Senior Wallaces agreed to repay the amount borrowed with monthly payments over the course of approximately five years. The

Loan Agreement also contained a "Third Party Agreement" (Security Agreement), which was signed by the Junior Wallaces. Through the Security Agreement, the Junior Wallaces pledged the 2009 Nissan as collateral for the loan, but the Junior Wallaces assumed no obligation for the debt itself.

[¶ 8] On August 25, 2009, the day after execution of the Loan Agreement and the Security Agreement, the Junior Wallaces, who were residents of Idaho, filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Idaho. As part of that filing, the Junior Wallaces listed the 2009 Nissan in a schedule of personal property that they owned.

[¶ 9] On February 17, 2010, during the course of the Junior Wallaces' bankruptcy proceeding, the bankruptcy trustee made a demand on Pinnacle to release its lien on the Nissan, on the ground that the lien was a preferential transfer. On February 25, 2010, Pinnacle stipulated to the release of its lien on the vehicle. On March 11, 2010, the bankruptcy trustee issued a notice of the intended sale of the vehicle and directed that any objections to that sale must be made within twenty days. On April 8, 2010, the Junior Wallaces, through their bankruptcy attorney, filed an objection to the sale, but the objection was withdrawn the following day. On April 26, 2010, the bankruptcy court approved the stipulation between the bankruptcy trustee and Pinnacle to avoid Pinnacle's lien on the vehicle.

[¶ 10] The Senior Wallaces made payments as required by the Loan Agreement through July 8, 2010. They stopped making payments owing a principal balance of $13,611.82. After the Senior Wallaces refused Pinnacle's demand for payment, Pinnacle filed a complaint seeking damages in the amount of the principal due on the note together with accrued interest, late fees, and attorney fees. The district court granted Pinnacle's summary judgment motion, explaining:

> All right. Based on what I've heard here today, the Court is going to grant Summary Judgment in favor of the Plaintiffs on their note. The Court finds that the object and purpose of the loan was not frustrated by the efforts of the Bank in this matter. That the Defendants are not the primary beneficiary of the collateralized loan, it's really there to protect the bank, and under this circumstance the Defendants are the debtors under the loan and are responsible to make the payments. The failure of the collateral was not a failure of the underlying note.

## STANDARD OF REVIEW

[¶ 11] Motions for summary judgment come before the trial court pursuant to Rule 56(c) of the Wyoming Rules of Civil Procedure, which provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Formisano v. Gaston*, 2011 WY 8, ¶ 3, 246 P.3d 286, 288 (Wyo.2011). We review a grant of summary judgment as follows:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. [*Snyder v. Lovercheck*, 992 P.2d 1079, 1083 (Wyo.1999)]; *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.* If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo.1999); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo.1994). We review a grant of

summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Roberts v. Klinkosh*, 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997).

*Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo.2011).

## DISCUSSION

[¶ 12] The Senior Wallaces do not dispute that they entered into the Loan Agreement with Pinnacle or that they defaulted on that loan still owing $13,611.82, plus interest. They instead contend that their obligation to repay the amount they borrowed was extinguished when the collateral vehicle was lost to the bankruptcy estate. Specifically, the Senior Wallaces contend that they are no longer obligated to repay Pinnacle because: 1) Pinnacle failed to mitigate its damages by contesting the bankruptcy trustee's claim to the vehicle; 2) the Loan Agreement was discharged by a supervening frustration; 3) Pinnacle is no longer the proper party in interest to enforce the Loan Agreement; and 4) Pinnacle's claim is barred by the Uniform Commercial Code (U.C.C.).

### 1. *Failure to Mitigate Damages*

[¶ 13] The Senior Wallaces contend that when the Junior Wallaces filed their bankruptcy petition, the Junior Wallaces had neither title to nor possession of the Nissan, and that Pinnacle was thus negligent in stipulating to a release of its lien. The Senior Wallaces argue then that it was Pinnacle's own negligence that caused it to lose the collateral for its loan and that Pinnacle thereby failed to mitigate its damages and should be barred from any recovery.

[¶ 14] We agree that under certain circumstances a party's failure to mitigate its damages may present a bar to recovery. *See Kerbs v. Walck*, 2010 WY 53, ¶ 33, 229 P.3d 974, 981 (Wyo.2010). This case does not present such circumstances.

[¶ 15] First, the Senior Wallaces' argument is premised on its insistence that Pinnacle had a duty to protect the collateral vehicle from seizure by the bankruptcy trustee after the Junior Wallaces filed their bankruptcy petition. No such duty can be found in the Loan Agreement. The Loan Agreement in fact provides to the contrary. Under the "Additional Terms" section applicable to the Senior Wallaces' Loan Agreement, the document provides that Pinnacle "may release any Borrower, endorser, guarantor, surety, accommodation maker, or any other cosigner," and Pinnacle "may release, substitute, or impair any Property securing this Loan Agreement." Pinnacle was thus under no obligation to protect its lien on the collateral vehicle from seizure by the bankruptcy trustee.

[¶ 16] Second, the Loan Agreement specifically gives Pinnacle several remedies to choose from in the event of a default. Pinnacle was permitted, among other remedies, to demand payment on all or any part of the amount owing under the Loan Agreement, to demand delivery of the collateral property and dispose of that property as provided by law, or to use any other remedy provided by law. Likewise, by law, Pinnacle, like any other creditor, was permitted, among other remedies, to take possession of the property and accept it as payment in full or sell it, or to take a judgment on the underlying obligation and proceed under the judgment. *See Eggeman v. Western Nat'l Bank*, 596 P.2d 318, 321–22 (Wyo.1979). Not only was Pinnacle under no obligation to protect its lien on the collateral vehicle, it was under no obligation to foreclose on that collateral for repayment in the event of a default.

[¶ 17] Finally, even if the Loan Agreement itself did not preclude the Senior Wallaces' mitigation argument, that argument is misplaced in these circumstances because of the simple fact that when Pinnacle released its lien on the collateral vehicle, it had no damages to mitigate. Pinnacle did not suffer damages until the Senior Wallaces defaulted on the Loan Agreement, several months after Pinnacle released its lien. If there were a duty to mitigate, it would not have been implicated until well after Pinnacle released its lien.

## 2. Discharge by Supervening Frustration

■ [¶ 18] The Senior Wallaces next argue that they are excused from performance under the Loan Agreement based on the doctrine of commercial frustration. Specifically, the Senior Wallaces contend that the purpose of the loan was to allow them to purchase a vehicle for their son, and when Pinnacle released its lien on that vehicle, thereby allowing the bankruptcy trustee to seize the vehicle, Pinnacle effectively destroyed "the basic assumption underlying the loan." We do not agree that Pinnacle's action frustrated the purpose of the loan and reject this as a basis to excuse the Senior Wallaces' performance under the Loan Agreement.

■ [¶ 19] This Court has defined the doctrine of commercial frustration in the following terms:

" * * * The doctrine of commercial frustration is close to but distinct from the doctrine of impossibility of performance. Both concern the effect of supervening circumstances upon the rights and duties of the parties but in cases of commercial frustration '[p]erformance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by a fortuitous event, which supervenes to cause an actual but not literal failure of consideration.' *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47, 50 (Cal. en banc 1944)."

*Downing v. Stiles*, 635 P.2d 808, 811 (Wyo. 1981) (quoting *Howard v. Nicholson*, 556 S.W.2d 477, 482 (Mo.App.1977)). The party seeking to be excused from performance under a contract based on this doctrine must prove the following elements:

1. The contract is at least partially executory.

2. A supervening event occurred after the contract was made.

3. The non-occurrence of such event was a basic assumption on which the contract was made.

4. Such occurrence frustrated the party's principal purpose for the contract.

5. The frustration was substantial, and

6. The party has not agreed, expressly or impliedly, to perform in spite of the occurrence of the event.

*Downing*, 635 P.2d at 814–15.

[¶ 20] We need not address each of these elements, because it is clear that the Senior Wallaces cannot prove the third element set forth above—that is, that Pinnacle's retention of its lien was "a basic assumption on which the contract was made." This argument, like the mitigation argument, is based on the premise that the collateral provision in the Loan Agreement was meant to benefit or protect the borrower, and that Pinnacle had a duty to hold and protect its collateral lien. The Loan Agreement does not support that premise. The Loan Agreement, as discussed above, allows Pinnacle to release, substitute or impair the loan's collateral, and for its remedies, to foreclose on the collateral or take any other lawful action. The Loan Agreement's terms make it clear that the pledging of collateral is solely for the protection and benefit of the bank, and it is impossible to argue that a basic assumption on which the loan was made was that Pinnacle would not release its lien, when the Loan Agreement itself expressly allows Pinnacle to do just that.

[¶ 21] Moreover, there was no failure of consideration. Pinnacle agreed to loan the Senior Wallaces $15,789, which loan the Senior Wallaces indicated in the Loan Agreement would be used to purchase a vehicle for their son. It is undisputed that Pinnacle did make the loan to the Senior Wallaces, that the Senior Wallaces did purchase a 2009 Nissan, and that the Senior Wallaces did transfer that vehicle to the Junior Wallaces. Pinnacle performed as required under the Loan Agreement, there was no supervening frustration of the Agreement's purpose, and the Senior Wallaces are not excused from their obligations under the Loan Agreement.

## 3. Proper Party in Interest

■ [¶ 22] The Senior Wallaces argue next that the collateral and note were inextricably intertwined and when Pinnacle released its lien, it transferred to the bankruptcy trustee both the lien and the underlying note. Thus, they contend, Pinnacle no longer

has a note on which to seek judgment. This argument finds no support in law and is contrary to the terms of the Loan Agreement, the Security Agreement and the bankruptcy court's "Order Approving Stipulation for Avoidance of Lien."

[¶ 23] As the Senior Wallaces correctly note, this Court has recognized that an assignment of a note carries its attached mortgage or lien with it, while an assignment of the mortgage or lien alone is a nullity. *See Bradburn v. Wyoming Trust Co. of Casper*, 51 Wyo. 73, 88, 63 P.2d 792, 797 (1936). This does little, however, to guide our decision here, where it is clear that the Loan Agreement and the Security Agreement are separate agreements, and Pinnacle did not transfer its Loan Agreement.

[¶ 24] The Loan Agreement was the note from the Senior Wallaces agreeing to repay the Pinnacle loan, which also allowed Pinnacle to release any collateral securing the loan. The Security Agreement was the third-party agreement signed by the Junior Wallaces pledging the vehicle as collateral for the loan, without any agreement by the Junior Wallaces to be personally responsible for the debt under the Loan Agreement. Under these circumstances, the debt, by the terms of the Loan Agreement, survives separation from the collateral. Whether the lien has any separate meaning in the bankruptcy context or any other context is immaterial. Pinnacle seeks enforcement of the Loan Agreement, not its lien.

[¶ 25] Additionally, there is no indication in the bankruptcy court's "Order Approving Stipulation for Avoidance of Lien" that Pinnacle transferred the Loan Agreement. The order does not address Pinnacle's note from the Senior Wallaces, or in any manner make that note property of the bankruptcy estate. Instead, the order's clear objective, as indicated by its title, was simply to avoid Pinnacle's lien on the vehicle. Specifically, the order directed that "Pinnacle Bank's lien in a 2009 Nissan Versa owned by the Debtors (the "Vehicle") is hereby avoided and the

Vehicle and all proceeds therefrom constitutes property of the bankruptcy estate." Again, whether the lien, which the order further directs to be held for the bankruptcy estate's benefit, has any value independent of the Senior Wallaces' note is not material to our decision.

### 4. *Barring of Claim by the U.C.C.*

 [¶ 26] The Senior Wallaces' final argument is that Pinnacle's claim is barred by the U.C.C.'s provision requiring notification prior to disposition of collateral. We again disagree.

[¶ 27] The U.C.C. notice provision relied on by the Senior Wallaces applies only when property is disposed of after a default. *See* Wyo. Stat. Ann. § 34.1–9–610(a) (LexisNexis 2011); Wyo. Stat. Ann. § 34.1–9–611(b) (LexisNexis 2011). Pinnacle released its lien on the Junior Wallaces' vehicle months before the Senior Wallaces defaulted on their Loan Agreement. The U.C.C. therefore does not bar Pinnacle's claim.

### CONCLUSION

[¶ 28] The Senior Wallaces are in default on their Loan Agreement with Pinnacle, and are not excused from performance by any of their asserted defenses. We therefore affirm the judgment of the district court in favor of Pinnacle and remand for further proceedings consistent with this opinion, including a determination of the accrued interest and attorney fees and execution on the judgment.[1]

---

1. The Senior Wallaces contend that disputes as to when the Junior Wallaces obtained title to and possession of the collateral vehicle have created material issues of fact, on appeal, that require reversal and a remand for a jury trial. The question of when the Junior Wallaces obtained title to and possession of the vehicle has not, however, affected our analysis of the issues on appeal, and we therefore decline the requested remand.