2012 WY 116

**Mark D. BRODERICK, Appellant (Defendant)**

v.

**WYO CENTRAL FEDERAL CREDIT UNION, Appellee (Plaintiff).**

No. S–12–0021.

Supreme Court of Wyoming.

Sept. 5, 2012.

Representing Appellant: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Representing Appellee: Thomas M. Hogan, Attorney at Law, Casper, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] In 2005, the Wyo Central Federal Credit Union (Credit Union) filed an action in state district court against Mark Broderick (Broderick) seeking judgment and foreclosure on a note and mortgage on which Broderick had defaulted. Broderick immediately filed a Chapter 13 bankruptcy petition, which stayed the Credit Union's state court action. Following the conclusion of the bankruptcy proceedings, which cured Broderick's original default under the note and mortgage but did not discharge the debt, Broderick again defaulted on the note. In 2010, the Credit Union amended its original complaint and again sought judgment and foreclosure on its note and mortgage. The district court granted the Credit Union summary judgment both on the amount the Credit Union demanded as due and owing under the note and on the attorney fees and costs it requested pursuant to the mortgage enforcement terms. We affirm.

### ISSUES

[¶ 2] Broderick presents the following issues on appeal, all of them relating to the award of attorney fees and costs:

1. Whether the determination by a state court of an oversecured creditor's attorney fees incurred in a bankruptcy proceeding is subject to the Preemption Doctrine?

2. Whether Appellee should be denied its attorney fees by its failure to submit these fees to the Bankruptcy Court for approval?

3. Whether Appellee proved its damages with a reasonable degree of certainty?

### FACTS

[¶ 3] On July 24, 2003, Broderick executed a fifteen-year note by which he agreed to repay the Credit Union the sum of $52,000.00, on or before August 1, 2018. The Note was secured by a Mortgage on Broderick's home executed on that same date. Broderick defaulted on the Note, and on September 26, 2005, the Credit Union filed a Complaint in district court seeking judgment and foreclosure on the Note and Mortgage. On September 28, 2005, Broderick responded by filing a Notice of Bankruptcy, and the district court thereafter stayed the state court

action until resolution of the bankruptcy proceeding.

[¶ 4] On January 16, 2008, the bankruptcy court confirmed Broderick's "Eighth Amended Chapter 13 Plan." Through payments under the plan, Broderick's default on the Note and Mortgage was cured, but the plan did not discharge the debt. Under the confirmed plan, Broderick was required to make payments directly to the Credit Union, in accordance with the terms of the Note. Those payments were to be made outside Broderick's plan payments and continue after Broderick's bankruptcy discharge. On August 11, 2009, the bankruptcy court issued its Discharge of Debtor After Completion of Chapter 13 Plan.

[¶ 5] Shortly after the bankruptcy court discharge, Broderick defaulted on the Note, and on April 22, 2010, the Credit Union filed an Amended Complaint, again seeking judgment and foreclosure on the Note and Mortgage. The Credit Union claimed unpaid principal in the amount of $36,024.94, plus interest accruing on that balance and late fees. The terms of the Note and the Mortgage obligated Broderick to pay the Credit Union's costs and expenses expended in the collection of the debt, and the Credit Union therefore also sought attorney fees and costs.

[¶ 6] On June 21, 2010, the Credit Union filed a motion for summary judgment on all of its claims. In its summary judgment motion, the Credit Union requested attorney fees in the amount of $34,079.55. The Credit Union attached to its motion a twenty-nine page fee statement, detailing the fees and costs its attorney charged on the Broderick matter from February 2, 2005, through May 24, 2010. Also attached to the summary judgment motion was an affidavit from the Credit Union's attorney, which attested to the following:

8. The following factors have been considered by your Affiant in determining what reasonable attorney fees should be allowed in this instance:

a. That Affiant has been a member of the Wyoming State Bar for approximately twenty seven (27) years and has been actively engaged in the practice of law in Natrona County, Wyoming, for approximately twenty seven (27) years and that on other occasions Affiant has handled similar actions for various clients involving legal questions of the same nature and complexity involved in the within action;

b. That, at the commencement of this case, Affiant charged the rate of $150.00 per hour in-house and $200.00 per hour in Court for services of Affiant in performing legal services in this matter. Later, these rates were changed to $200.00 per hour in-house and $250.00 per hour in Court for services of Affiant in performing legal services in this matter, that to Affiant's best knowledge and belief rates for similar actions throughout Natrona County and the State of Wyoming vary from $90.00 to $300.00 per hour for similar legal services; that the hourly rate charged by Affiant is, in Affiant's opinion and legal experience, reasonable, commensurate and well within the range of fees customarily charged by other attorneys in this locality for similar services.

c. That Affiant charges the rate of $75.00 per hour and $90.00 per hour for paralegal work in this matter; that to Affiant's best knowledge and belief rates for similar services throughout Natrona County and the State of Wyoming vary from $35.00 to $105.00 per hour; that the hourly rate charged by Affiant is, in Affiant's opinion and legal experience, reasonable, commensurate and well within the range of fees customarily charged by other firms for paralegal services.

d. As of May 31, 2010, for representing the Plaintiff in this matter and in the Defendant's bankruptcy proceeding, Affiant has charged the Plaintiff to that date a total of $40,517.50 in fees and a total of $765.26 in costs for a total of $41,282.76 which fees and costs are set out in detail in the attached statement dated May 31, 2010.

e. Your Affiant's involvement in this case has precluded him from accepting other employment from other clients as well as the Plaintiff.

9. As of August 22, 2008, the Plaintiff had received from the Defendant's Chapter 13 Bankruptcy Trustee payments for court-

approved attorney fees and costs in the principal sum of Seven Thousand Two Hundred Three and 21/100 Dollars ($7,203.21) for which the Defendant should be given credit against the total amount of reasonable attorney fees and costs awarded herein.

10. That in the opinion and legal expertise of your Affiant, based upon the ability and quality of the attorney involved in this matter, the complexity of the matter, the work actually performed to date, the manner in which said work has to date been done and in the future will be performed and the expected result of the legal services performed to date, when considered in the further light of fees customarily charged in the locality of Natrona County, Wyoming for similar services, a fee of $40,517.50 is a reasonable attorney's fee in the within action for my representation up through and including May 31, 2010; that the Plaintiff ought to also recover $765.26 in costs; that the Defendant should be given credit against these fees and costs in the amount of $7,203.21; and that the Plaintiff is entitled to a total award of $34,079.55. It is also anticipated that the Plaintiff will incur additional attorney's fees and costs from and after May 31, 2010 and that this Court should, after further notice and hearing, award the Plaintiff said additional reasonable costs and fees.

[¶ 7] On July 29, 2010, Broderick filed in the bankruptcy court a motion to reopen his bankruptcy case, along with a Motion for Order to Show Cause and/or Contempt Citation. Through those motions, Broderick requested that the bankruptcy court hold the Credit Union in contempt for "attempting to assess attorney fees against [Broderick] in violation of the Bankruptcy Code and … [the] plan confirmation order." In particular, Broderick argued to the bankruptcy court that the Credit Union's failure to apply to that court for compensation for attorney fees and costs, pursuant to Fed. R. Bankr.P. 2016(a), must result in a denial of such fees and costs.

[¶ 8] On August 6, 2010, Broderick filed an objection in state district court to the Credit Union's summary judgment motion.

He argued the following in opposition to the motion:

There are genuine issues of material fact regarding (1) the amount of Plaintiff's attorney fees, since $34,389.69 were not disclosed to or approved by the Bankruptcy Court, (2) the application of the payments as between late charges, escrow expenses, attorney fees and principal and interest, and (3) whether all payments made by Defendant to Plaintiff have been applied to the loan balance.

[¶ 9] On August 13, 2010, the bankruptcy court entered an order reopening Broderick's bankruptcy case. On August 17, 2010, Broderick filed in state district court a Motion to Stay Proceedings, requesting that the state action be stayed until such time as the bankruptcy court had an opportunity to rule on the bankruptcy-related issues. On September 14, 2010, the district court entered an Order Granting Stay of Proceedings until the bankruptcy court's resolution of any bankruptcy-related issues.

[¶ 10] On February 2, 2011, the bankruptcy court issued an order denying the relief requested by Broderick. The court found that the Credit Union had properly applied the trustee distributions it received pursuant to the confirmed plan, and that its foreclosure action did not violate the discharge order since Broderick's confirmed plan provided for payment of the Credit Union debt outside the plan. The court further found as follows with respect to overlapping attorney fees between the bankruptcy and foreclosure proceedings:

Wyo Central, when it filed its complaint to foreclose its security interest in the Seventh Judicial District Court, included a request for attorney fees that also appears to encompass fees that were already approved and paid in the bankruptcy case. The court finds the applicant's statements to the court, that inclusion of those fees requested in the state court action was in error as credible. The court finds that this is harmless error and denies Debtor's request for sanctions.

[¶ 11] On February 7, 2011, Broderick filed a motion to alter or amend the bankruptcy court's order denying his contempt

motion, and on June 13, 2011, the bankruptcy court issued an order denying that motion. On August 11, 2011, the district court set the Credit Union's summary judgment motion for hearing, and on September 29, 2011, it heard argument on the motion. On December 15, 2011, the district court entered an order granting the Credit Union's summary judgment motion. With respect to attorney fees and costs, the order provided:

> The court entertained the arguments of counsel for the parties and made note that counsel for the Plaintiff, in order to remove any possible confusion or controversy concerning the attorney fees awarded and paid in the Defendant's bankruptcy case and those requested in this "Plaintiff's Motion for Summary Judgment", verbally revised his "AFFIDAVIT OF THOMAS M. HOGAN [IN] SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR AWARD OF REASONABLE ATTORNEY'S FEES" filed herein on June 21, 2010 to remove the Plaintiff's request for attorney fees and costs from the beginning of this matter up through and including May 31, 2007, that period representing the dates considered by the Defendant's bankruptcy court in it[s] previous ruling allowing for the Plaintiff's attorney fees and costs. Plaintiff's counsel represented to this court that the revised figures for attorney fees and costs requested in this matter are as follows:

Requested fees and costs
through May 31, 2010
(Affidavit)—           $41,282.76
Fees and costs through May
31, 2007 (Bankruptcy Court
adjudication)—         <19,653.82>

Revised request for fees and
costs, June 1, 2007 thru
May 31, 2010—          $21,628.94

[¶ 12]   Based on the verbal revisions counsel for the Credit Union made to the Credit Union's request for fees and costs, the district court awarded fees and costs in the amount of $21,628.94.

## STANDARD OF REVIEW

[¶ 13]   Motions for summary judgment come before the trial court pursuant to Rule 56(c) of the Wyoming Rules of Civil Procedure, which provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Redco Const. v. Profile Properties, LLC*, 2012 WY 24, ¶ 21, 271 P.3d 408, 414 (Wyo.2012) (quoting *Formisano v. Gaston*, 2011 WY 8, ¶ 3, 246 P.3d 286, 288 (Wyo.2011)). We review a grant of summary judgment following a well-established procedure:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. [*Snyder v. Lovercheck*, 992 P.2d 1079, 1083 (Wyo.1999) ]; *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.* If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo.1999); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo.1994). We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Roberts v. Klinkosh*, 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo.1997).

*Wallace v. Pinnacle Bank–Wyoming*, 2012 WY 64, ¶ 11, 275 P.3d 1250, 1253–54 (Wyo. 2012) (quoting *Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo.2011)).

[¶ 14] Our standard for reviewing an attorney fees award is likewise well established. This Court reviews a district court's decision awarding attorney fees for an abuse of discretion, and the appellant bears the burden of establishing that the trial court abused its discretion. *Askvig v. Wells Fargo Bank Wyoming, N.A.*, 2005 WY 138, ¶ 22, 121 P.3d 783, 789 (Wyo.2005) (citing *Johnston v. Stephenson*, 938 P.2d 861, 862 (Wyo. 1997)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 11, 77 P.3d 412, 416 (Wyo.2003) (quoting *Pasenelli v. Pasenelli*, 2002 WY 159, ¶ 11, 57 P.3d 324, 329 (Wyo.2002)).

## DISCUSSION

[¶ 15] Broderick has condensed his three issues relating to attorney fees into two arguments. Broderick first contends that summary judgment was improper because federal bankruptcy law preempts the issue of attorney fees related to Broderick's bankruptcy and only the bankruptcy court may rule on the fee issue. Broderick's second contention is that the Credit Union failed to prove its fees and costs with the required certainty. We reject both arguments.

### 1. *Bankruptcy Law Preemption*

[¶ 16] Broderick argues that to the extent the Credit Union sought recovery of fees it incurred during Broderick's bankruptcy, Fed. R. Bankr.P.2016(a) requires bankruptcy court approval of those fees. He argues that under principles of federal preemption, this bankruptcy rule controls over any conflicting state law.

[¶ 17] We reject Broderick's argument because Rule 2016, by its plain terms, applies only to applications for payment from the bankruptcy estate. The rule provides, in relevant part:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, *from the estate* shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Fed. R. Bankr.P.2016(a) (emphasis added).

[¶ 18] The Credit Union applied for attorney fees and costs after Broderick's bankruptcy case was closed, based on Broderick's post-discharge default, and it applied for those fees and costs to be paid from foreclosure proceeds, not from the bankruptcy estate. Bankruptcy Rule 2016(a) therefore does not apply.[1]

[¶ 19] That the present foreclosure proceedings are outside the bankruptcy estate and do not infringe on the bankruptcy domain is confirmed by the bankruptcy court's ruling on Broderick's contempt motion, which he filed after the Credit Union began the present proceedings. The bankruptcy court ruled that the foreclosure proceedings were proper and did not violate its discharge order.

> The Debtor alleges that Wyo Central's action to foreclose its security interest in the state court violates the discharge. The Debtor's confirmed plan provided for the payment to Wyo Central under Class 8, "Unmodified Claims" or "outside of the plan." The plan language of 11 U.S.C. § 1326(c) allows that the plan or the order confirming the plan can "otherwise provide" for payments to creditors under the plan. This is what the Debtor chose to do in making payments to Wyo Central under Class 8.

---

1. We find no authority to the contrary in the cases cited by Broderick. *See In re Moffitt*, 408 B.R. 249, 258–59 (Bankr.E.D.Ark.2009) (creditor must file a Rule 2016 application with the bankruptcy court in order to collect fees *from the estate*) (emphasis added); *In re Payne*, 387 B.R. 614, 631 (Bankr.D.Kan.2008) ("While § 1322(b)(2) preserves a lender's pre-petition rights and protects them from modification through the plan, a 'contractual right to seek reimbursement is not the equivalent of a right to collect an undisclosed charge *from the estate.*'") (citation omitted and emphasis added); *In re Sanchez*, 372 B.R. 289, 304–05 (Bankr.S.D.Tex. 2007) ("Defendant, as the entity seeking reimbursement for expenses *from the estate*, has the burden to file Rule 2016 disclosures[.]") (emphasis added).

A debtor may choose not to provide for a secured claim and elect instead to pay those claims directly to the creditor outside the plan. The lien securing those claims merely passes through the bankruptcy unaffected.... such claim will not be eligible for discharge. The Debtor did not receive a discharge on this secured debt that was classified as an Unmodified Claim. Therefore, the Court finds that Wyo Central did not violate the discharge upon filing a proceeding in the state court after the Debtor's discharge was entered and the case was closed. [Citations omitted.]

[¶ 20] The Credit Union filed its initial foreclosure action in 2005 and amended that action in 2010 when Broderick again defaulted after his bankruptcy case was concluded. While the bankruptcy case was on-going, the Credit Union sought reimbursement for certain of its fees and costs from the bankruptcy estate. For those fees and costs, the Credit Union sought approval from the bankruptcy court as required by Bankruptcy Rule 2016(a). The fees and costs at issue in this appeal, however, are those fees and costs for which the Credit Union did not previously seek reimbursement from the bankruptcy estate. The Credit Union seeks reimbursement of these fees, not from any bankruptcy proceeds, but from the foreclosure proceeds as allowed by the express terms of the Note and Mortgage.

[¶ 21] The Note provides as follows concerning the Credit Union's right to fees and costs in the event of Broderick's default:

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

[¶ 22] Section 22 of the Mortgage contains a similar attorney fee and costs shifting provision:

If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

[¶ 23] A separate provision of the Mortgage allows the Credit Union to also collect costs related to protecting its interests in any bankruptcy proceeding. Section 9 of the Mortgage provides, in part:

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, [or] (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), ... then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including ... (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding....

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.

[¶ 24] Under the terms of the Note and Mortgage, the Credit Union has a clear right to reimbursement from the foreclosure proceeds for the expenses it incurred in pursuing its foreclosure action and protecting its security interest. The Credit Union's right to reimbursement of fees and costs is independent of Broderick's bankruptcy, was pursued after Broderick's bankruptcy case was concluded, and does not run afoul of bankruptcy law.

**2. *Adequacy of Credit Union's Proof of Fees and Costs***

[¶ 25] Broderick argues that the Credit Union did not prove its attorney fees

and costs to a reasonable degree of certainty. In particular, Broderick contends that the Credit Union's oral revision to the application during argument, its redactions in the fee statements, its lack of clarity regarding which loan obligation the fees applied to, and mathematical errors in the fee calculations have created such confusion that the amount of fees cannot be determined with a reasonable degree of specificity. We disagree.

[¶ 26] With respect to the oral revision to the fee application, the district court's order is clear that the Credit Union removed all fees and costs incurred through May 31, 2007, from its application. That left fourteen pages of fee statements with charges clearly detailed from June 7, 2007, through May 24, 2010. We find nothing confusing in the oral revision.

[¶ 27] With respect to the alleged confusion caused by redactions in the fee statements, we find that in the fourteen pages of fee statements that remained after the oral revision, there is one redaction. The redaction appears in the entry for one-half hour of time on May 2, 2008, and reads as follows:

> Janice wrote—'We have just received a 10 day payoff request from WESC FCU for Broderick. [Redacted Text]—Review payoff fax. Telecon with Janeice and Tyler—went through figures for payoff.

Broderick does not explain how this single redaction caused even this one entry to become too vague to determine the reasonableness of the charge, let alone how it rendered the entire fee application too vague. We thus reject this argument.

[¶ 28] With respect to the question of which loan obligation the fees and costs apply to, the Credit Union submitted an affidavit from its attorney which stated that the Note and Mortgage form the basis of the Credit Union's claims in this matter. Broderick presented no evidence to the contrary, and we thus reject this argument.

[¶ 29] With respect to the alleged errors in mathematical calculations, Broderick again presented no evidence of such errors, or even examples of such errors. We thus, again, reject Broderick's argument.

[¶ 30] Wyoming Statute § 1–14–126 allows the district court discretion to determine the reasonableness of an application for attorney fees and costs based on:

> (i) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (ii) The likelihood that the acceptance of the particular employment precluded other employment by the lawyer;

> (iii) The fee customarily charged in the locality for similar legal services;

> (iv) The amount involved and the results obtained;

> (v) The time limitations imposed by the client or by the circumstances;

> (vi) The nature and length of the professional relationship with the client;

> (vii) The experience, reputation and ability of the lawyer or lawyers performing the services; and

> (viii) Whether the fee is fixed or contingent.

Wyo. Stat. Ann. § 1–14–126(b) (LexisNexis 2011).

[¶ 31] The Credit Union's fee application addressed these factors through the attached affidavit of its attorney, and the attached fee statements set forth the fee and cost amounts with sufficient certainty. We thus find no abuse of discretion in the district court's award of fees and costs.

## CONCLUSION

[¶ 32] The district court acted within its discretion in its award of fees and costs to the Credit Union, and its order did not violate bankruptcy law or procedure. Affirmed.