2011 WY 80

**Christine A. LINDSEY, Appellant (Defendant),**

v.

**Carol Peitersen HARRIET and Donald Peitersen, Appellees (Plaintiffs).**

No. S–10–0046.

Supreme Court of Wyoming.

May 13, 2011.

Representing Appellant: Ann M. Rochelle of Rochelle Law Offices, P.C., Casper, Wyoming.

Representing Appellees: Timothy J. Kirven of Kirven and Kirven, P.C., Buffalo, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT,* and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Christine A. Lindsey (Lindsey), owner of sixty-seven shares of corporate stock of Burnett Livestock Company (Company), appeals the district court's summary judgment that imposed a constructive trust upon those sixty-seven shares for the benefit of several of her relatives, including her aunt and uncle, Carol Peitersen Harriet and Donald Peitersen (Appellees), in accordance with the provisions of a document entitled Agreement for Disposition of Rental and/or Royalty Income (1989 Agreement) signed on February 20, 1989, by Janet Sue Lohry, who was Lindsey's mother, and Helen Peitersen, who was Lindsey's grandmother. We reverse the summary judgment and remand for further proceedings consistent with this opinion.

## ISSUES

[¶ 2] Lindsey sets forth her statement of the issues in this fashion:

1. *No Creditor's Claim was Filed by Appellees in the Estate of Janet Lohry Thus Barring this Constructive Trust Claim:* Was the claim of Appellees for a constructive trust barred because they failed to file a creditor's claim in the Estate of Janet Lohry?

2. *Gifts Were Made in 1987 and 2001:* Was the transfer of the 67 shares of stock

* Chief Justice at time of oral argument

by Helen Peitersen to Janet Lohry in August 1987 a completed gift?

Was the transfer of the 67 shares of stock by Janet Lohry in March 2001 to Christine Lindsey a completed gift?

3. *There Was No Constructive Trust:* Did the *Agreement for Disposition of Rental and/or Royalty Income* dated February 20, 1989, constitute a promise made in 1987 by which Janet Lohry induced Helen Peitersen to transfer the 67 shares of BLC stock to Janet Lohry in 1987 and by which transfer Janet Lohry was unjustly enriched so as to support a constructive trust?

4. *At Best, the Agreement Was a Life Estate for Income Based on Janet's Life:* Assuming *arguendo* that the *Agreement* was a promise to induce Helen Peitersen to transfer the 67 shares of BLC stock to Janet, what were the terms of that promise? The *Agreement* by its own terms:

- Was limited to income.
- Was limited to the lifetime of Janet Lohry.
- Imposed an obligation on Janet Lohry, but no one else.
- Acknowledged that Janet Lohry was the owner of the 67 shares.
- Acknowledged that Janet had the unfettered rights as to the disposition of those stock shares.

Appellees state this issue:

Did the District Court correctly grant Plaintiffs' Motion for Summary Judgment enforcing the Agreement for Disposition of Rental and/or Royalty Income and imposing a constructive trust on shares of stock held by Appellant?

Lindsey also filed a reply brief regarding the creditor's notice issue; a revocable assignment issue; and the issue whether Janet Sue Lohry's transfer of the shares of stock to Lindsey was effective before Janet Sue Lohry's death.

### FACTS

[¶ 3] Helen Peitersen's children were Janet Sue Lohry, Keri J. Haswell, Bette G. Peitersen, and Appellees. Helen Peitersen acquired fifty shares of Company stock on November 20, 1959, and another seventeen shares on September 7, 1979. On August 14, 1987, Helen Peitersen assigned her sixty-seven shares of Company stock to her daughter, Janet Sue Lohry, and Stock Certificate No. 83 evidencing those shares was issued to that daughter. Sixteen days later, on August 30, 1987, Helen Peitersen wrote the following letter to that daughter:

Dear Janet:

It was great having you all here this weekend. And thank you for the phone call yesterday. I feel much better after talking with you.

Thought I had collected all of the Burnett Livestock papers, but found this in my desk last night. I believe the best way to handle this stock would be if any dividends go over a[sic] $1000 they should be divided equally among you five children. Anything below that should be kept for you for the handling of the company. That will be provided for in our will. How do you feel about this, would it pose a tax problem (for you) if we were to get a substantial amt. on a lease? We must be sure we handled this the easiest possible way for you. Give it some thought as we need to update our will this winter.... Love, Mom

[¶ 4] Almost eighteen months later, on February 20, 1989, Helen Peitersen and her daughter, Janet Sue Lohry, signed the 1989 Agreement:

AGREEMENT FOR DISPOSITION OF RENTAL AND/OR ROYALTY INCOME

WHEREAS, JANET SUE LOHRY is the owner of Sixty–Seven (67) shares of BURNETT LIVESTOCK COMPANY, a Wyoming Corporation, of which she is President; and

WHEREAS, those shares were transferred to her by her mother, HELEN A. PEITERSEN, as a result of the intent expressed in her father's will; and

WHEREAS, both, JANET SUE LOHRY and HELEN A. PEITERSEN are desirous to provide that the income from the BURNETT LIVESTOCK COMPANY, which may be enjoyed as a result of the ownership of these shares be divided to

provide some benefit to the other family members;

NOW THEREFORE IT IS AGREED, that when such time arises as the income of the BURNETT LIVESTOCK COMPANY is such that there is an excess of corporate income over expenditures sufficient to issue a dividend with a reasonable reserve for capital expenditures, and to the extent that JANET SUE LOHRY is able to require the corporation to make a distribution to the shareholders of all funds over and above those necessary for corporate expenditures, said dividend shall when received by JANET SUE LOHRY be distributed as follows:

1. JANET SUE LOHRY and HELEN A. PEITERSEN — 50%
2. DONALD B. PEITERSEN — 12.5%
3. CAROL A. HARRIET — 12.5%
4. KARI J. HASWELL — 12.5%
5. BETTY G. PEITERSEN — 12.5%

THIS AGREEMENT is only enforceable to the extent that each of the beneficiaries of this distribution of the corporate income, shall agree to be fully responsible for their share of the tax consequences of such distribution.

IT IS FURTHER UNDERSTOOD, that JANET SUE LOHRY may control the disposition of the shares, and the ownership of the shares is to remain in her name and under her complete control, except as set out above with regard to the disposition of dividend income.

[¶ 5] More than seven years later, on September 30, 1996, Janet Sue Lohry executed her will which provided in pertinent part that her sixty-seven shares of Company stock were bequeathed to her daughter Lindsey, subject to the terms of the 1989 Agreement. Ten months later, on August 1, 1997, Janet Sue Lohry signed two handwritten documents, but there is no indication which of the documents was written first. One document reads as follows:

Burnett Livestock Co.

67 Shares

Let it be known that my wishes & intent in bequeathing 67 shares of Burnett Livestock Co. to my daughter, Christine A. Lohry, is for the purpose of providing her, and her alone, full & sole use of the shares.

She will, in accordance with my wishes, distribute any dividends in an equitable manner between herself, Gary Peitersen, Don Peitersen and Carol Peitersen. Upon the death of any of these parties, she will return their portion to the common pool and redistribute equatably [sic].

Under no circumstances is she to distribute any dividends to her grandmother, Helen Peitersen, if living, Kari Haswell or Bette Peitersen. Distribution to them terminates upon my death.

Janet S. Lohry

August 1, 1997

This statement is made in hope of protecting her inherited rights.

[¶ 6] We can make several observations about this document. The person referred to as Christine A. Lohry is the appellant Lindsey, and the person referred to as Gary Peitersen is Lindsey's brother. Comparing the dividends distribution stated in this 1997 document with the dividends distribution stated in the 1989 Agreement, which is referred to in Janet Sue Lohry's 1996 will, we see that there are now different beneficiaries:

1. Gary Peitersen was not listed in the 1989 Agreement, but now is listed in this 1997 document;
2. Kari Haswell was listed in the 1989 Agreement, but now is not listed in the 1997 document;
3. Bette Peitersen was listed in the 1989 Agreement, but now is not listed in the 1997 document;
4. Helen Peitersen was listed in the 1989 Agreement, but now is not listed in the 1997 document.

Comparing the amounts of dividends to be distributed under the 1989 Agreement with those under the 1997 document, we see that the percentages set forth in the former no longer exist in the latter. That is, the 1997 document states simply that Lindsey will distribute "any dividends in an equitable manner between herself, Gary Peitersen, Don Peitersen and Carol Peitersen."

[¶ 7] The other handwritten document signed by Janet Sue Lohry on August 1, 1997, reads as follows:

Dividend Distribution on Burnett Livestock Co.

Effective this date, all previous agreements regarding my shares in Burnett Livestock Co. are null and void.

This statement reflects my wishes and intent to distribute any dividends received from my 67 shares as follows:

1. 10% set aside for Federal tax;
2. 40% for my use;
3. 15% for Don Peitersen;
4. 15% for Carol Harriet;
5. 10% for Helen A. Peitersen;
6. 5% for Kari Haswell; and
7. 5% for Bette Peitersen.

If Helen Peitersen should predease [sic] me, her 10% should be divided equally between Don and Carol. If I am predeased [sic] by any others, it is at my discretion to determine distribution.

Janet S. Lohry

August 1, 1997

[¶ 8] We can make several observations about this document. First, it declares null and void all previous agreements regarding Janet Sue Lohry's shares in the Company. Second, it purports to apply to dividends she would distribute during her lifetime. Third, it changes the percentages of dividends set forth in the 1989 Agreement, as a side-by-side comparison shows:

**1989 Agreement**

| | | |
|---|---|---|
| 1. | Janet Sue Lohry and Helen Peitersen | 50% |
| 2. | Donald Peitersen | 12.5% |
| 3. | Carol Harriet | 12.5% |
| 4. | Kari Haswell | 12.5% |
| 5. | Bette Peitersen | 12.5% |
| 6. | Federal tax | 0% |

**1997 document**

| | | |
|---|---|---|
| 1. | Janet Sue Lohry | 40% |
| 2. | Helen Peitersen | 10% |
| 3. | Donald Peitersen | 15% |
| 4. | Carol Harriet | 15% |
| 5. | Kari Haswell | 5% |
| 6. | Bette Peitersen | 5% |
| 7. | Federal tax | 10% |

[¶ 9] Before leaving our mention of these two handwritten documents dated August 1, 1997, we must note that in Lindsey's affidavit dated October 23, 2009, submitted in the summary judgment proceedings below, Lindsey stated that she did not find these two documents in her mother's effects until either 2007 or 2008, which was six or seven years after her mother's death and the probate of her mother's 1996 will.

[¶ 10] On July 14, 1998, Lindsey's grandmother, Helen Peitersen, died, and there is no known probate of her estate. On March 9, 2001, some three and a half years after she wrote the two documents dated August 1, 1997, referred to above, Janet Sue Lohry sent the following letter to Darlene Reiter, the Company's attorney:

As you are aware, due to health problems, it has become necessary for me to end my association with Burnett Livestock. Enclosed you will find my 67 shares of Burnett Livestock, which I direct be transferred to my daughter, Christy Lindsey, [address and telephone number]. Would ask that you contact Tricia Kenny to establish the effective date of transfer.

I would like to thank you for your advice and friendship over these years as we have fought to make Burnett Livestock that what my grandpa Davison had envisioned. I wish you and everyone associated with Burnett Livestock the utmost success.

Ms. Reiter likely received this letter on Monday, March 12, 2001. On March 23, 2001, Ms. Reiter mailed to Janet Sue Lohry the following letter:

Re: Transfer of Burnett Livestock Company Stock Certificates

Dear Janet:

I will miss you, as I have really enjoyed your good humor. I will think of you as the Honesty seeds grow.

You will find enclosed an Assignment Separate From Certificate, which you need to sign so that we can transfer your 67 shares of stock to Chris.

Since Chris will not be President until after the transfer, I am also enclosing her new certificate which you need to sign in the bottom right corner. We have three other new certificates as well and I would like you to sign those—they are enclosed and follow Chris's certificate.

Please return everything to us in the enclosed stamped, self-addressed envelope. If you have any questions, please call. Thank you.

[¶ 11] Janet Sue Lohry, Lindsey's mother, died that same day, March 23, 2001, before she received Ms. Reiter's letter. On April 2, 2001, Burnett Livestock Certificate No. 104, representing the sixty-seven shares that had been owned by Janet Sue Lohry, was issued to Lindsey.

[¶ 12] On August 7, 2001, Janet Sue Lohry's 1996 will was admitted to probate. On February 19, 2003, the court entered its Order Approving Final Account and Decree of Distribution. As mentioned earlier, Janet Sue Lohry's 1996 will provided in pertinent part that her sixty-seven shares of Company stock were bequeathed to Lindsey subject to the terms of the 1989 Agreement. According to Lindsey, she did not find the 1989 Agreement until some time in either 2007 or 2008.

[¶ 13] On September 9, 2008, Appellees filed their complaint against Lindsey. They alleged in pertinent part:

1. Before her death, Helen Peitersen transferred to her daughter, Janet Sue Lohry, sixty-seven shares of the Company "upon the express promise and condition that ... 13.4 of said shares be held for the benefit of each of the" Appellees;

2. Janet Lohry, having received such shares, in turn effected a transfer of those shares to her daughter Lindsey "upon the express condition and promise that ... 13.4 of said shares be held for the benefit of each of" the Appellees;

3. Helen Peitersen's transfer of said shares "was made in reliance upon the express promise to hold" 13.4 of said shares for the benefit of each of the Appellees;

4. Lindsey, upon demand, has refused to transfer said 13.4 shares to each Appellee;

5. Lindsey's use and conversion of said shares to her own use unjustly enriches her to the Appellees' damage and detriment;

6. Lindsey is unjustly enriched by the retention of such shares as her own individual property and any dividends paid thereon;

7. Appellees seek the court's imposition of a constructive trust upon the 13.4 shares of the Company held for their benefit; the court's order requiring an accounting for any income related to those shares; the court's order compelling the transfer of those shares and any monies derived therefrom to each of the Appellees; and that Appellees be awarded their reasonable costs and attorney's fees and other relief as the court deems just and equitable.

[¶ 14] On October 15, 2008, Lindsey filed her answer to the complaint in which she admitted that she retained the sixty-seven shares of the Company stock given to her by her mother, Janet Sue Lohry, denied the other allegations contained in the complaint, and asserted several affirmative defenses. Later, on September 25, 2009, pursuant to court order, Lindsey filed an amended answer which restated her original answer and added other affirmative defenses, including that no clear and definite agreement existed so as to constitute a constructive trust.

[¶ 15] The parties then pursued discovery. Both parties subsequently filed motions for summary judgment with supporting evidentiary materials and legal memoranda, Lindsey filing hers on October 23, 2009, and Appellees filing theirs on October 29, 2009. On November 10, 2009, the district court heard the parties' arguments on the cross motions for summary judgment. On November 13, 2009, the district court issued this brief decision letter:

Dear Counsel:

The above matter having come before the court upon motions for summary judgment, I find that there is no genuine dispute of material fact and that plaintiffs are entitled to judgment as a matter of law. The governing document is the agreement for disposition of rental and/or royalty income between Janet Lohry and Helen Peitersen dated February 20, 1989. The document is unambiguous. Ownership of stock is transferred to Janet with the agreement that Janet shall distribute the dividends to various people, including plaintiffs. This gives plaintiffs legally protected interests as third-party beneficiaries. It establishes that Janet has the legal right to only 50% of the dividends. Thus, this is all that Janet could have transferred to defendant. No one has authority to terminate the rights of plaintiffs.

The elements for a constructive trust are satisfied. There was a promise by Janet and a transfer of stock in reliance upon that promise. Unjust enrichment would result if anyone relieved plaintiffs of their interests without permission.

Consequently, plaintiffs are entitled to relief through establishment of a. constructive trust.

[¶ 16] On January 4, 2010, the district court filed its order granting summary judgment for Appellees and denying summary judgment for Lindsey. The order reads:

THIS MATTER having come on before the Court upon the Motions for Summary Judgment by each of the parties, the Plaintiffs appearing by and through their attorney, Timothy J. Kirven of Kirven and Kirven, P.C. of Buffalo, Wyoming and the Defendant appearing by and through her attorney, Ann M. Rochelle, of Rochelle Law Offices, Casper, Wyoming, and the Court having reviewed the file herein, having heard the arguments of counsel, and being fully advised in the premises, finds that there is no genuine issue of material fact and that Plaintiffs are entitled to judgment as a matter of law. The Court further finds that Plaintiffs are entitled to relief through establishment of a constructive trust as set forth herein.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Plaintiffs' Motion for Summary Judgment be, and the same hereby is, granted;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Defendant's Motion for Summary Judgment be, and the same is hereby is [sic] denied;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that pursuant to § 4–10–102 of the Uniform Trust Code of the State of Wyoming, there is hereby established a trust, to be known as the Peitersen Heirs Trust, to be held and administered as follows:

1. Pursuant to this judgment, the beneficiaries of said trust shall be as follows:

A) Carol A. Peitersen Harriet, her heirs, successors and assigns–12.5%[;]

B) Donald B. Peitersen, his heirs, successors and assigns–12.5%[;]

C) Those remaining individuals specified and named in that certain Agreement for Disposition of Rental and/or Royalty Income dated February 20, 1989. (Lindsey deposition Exhibit No. 3)[.]

2. Pursuant to *Wyoming Statute* § 4–10–402, the Defendant shall, within twenty (20) days of the date of entry of this Summary Judgment, transfer the sixty-seven (67) shares of Burnett Livestock Company stock to the Peitersen Heirs Trust, which trust shall bear the same date as this Summary Judgment.

3. The initial qualified trustee of the trust shall be Christine A. Lindsey.

4. The principal place of administration of this trust shall be Natrona County, Wyoming and such trust shall be subject to continuing judicial supervision by this Court. This Court shall have exclusive jurisdiction of proceedings in this state brought by trustee, or a beneficiary concerning the administration of the trust.

5. The interest of a beneficiary in this trust may be assigned by such beneficiary to the lineal descendants of Helen A. Peitersen.

6. To the extent permitted by law, the interest of the beneficiary in this trust is held subject to spendthrift restrictions which provide as follows:

To the full extent permitted by law, the interest of the beneficiaries hereunder shall not be anticipated, assigned, or encumbered unless specifically authorized by the terms of this Trust Agreement, and such interests shall not be subject to the claims of creditors of any beneficiary, or to legal process, prior to actual receipt by the beneficiary.

7. Mandatory distributions of all of the income of the trust, including income received by reason of, or interest upon distributions relating to the 67 shares of Burnett Livestock shall be made within 20 days of the date of receipt of the same from Burnett Livestock Company. Such distribution shall be a mandatory distribution as defined by Wyoming law. Such distributions shall include any and all accrued interest attributable to the distribution.

8. The beneficiaries of the trust shall be responsible for the payment of income tax due upon all income from the trust to the extent of the interest of the beneficiary. The trustee shall cause to be timely issued all necessary tax reporting forms within 45 days of the end of the calendar year. All beneficiaries of the trust shall be required to furnish to the trustee the proper tax identification number of the beneficiary as well as the beneficiary's proper and current address.

9. The trustee shall serve without compensation.

10. The trustee shall be entitled to be reimbursed out of the trust property for the following expenses:

(i) Expenses properly incurred in the administration of the trust;

(ii) An advance by the Trustee of money for the protection of the trust.

11. No income, distributions, or other interest of a beneficiary shall be obligated or used for payment of any expenses or attorney fees not involving the interest of such beneficiary.

12. The trustee shall administer the trust in good faith, in accordance with the terms and purposes in interest of the beneficiaries, and in accordance with the terms of this Summary Judgment and the provisions of *Wyoming Statute* § 4–10–802, Duty of Loyalty.

13. The trustee shall keep adequate records of the administration of the trust as provided by *Wyoming Statute* § 4–10–810.

14. The trustee shall keep trust property separate from the trustee's own property as provided by *Wyoming Statute* § 4–10–810.

15. The trustee shall inform and report to the beneficiaries as required by *Wyoming Statute* § 4–10–813.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that Plaintiffs have Judgment against the Defendant for the sum of FIFTEEN THOUSAND EIGHTEEN and NO/100 DOLLARS ($15,018.00); together with pre-judgment interest in the amount of $659.56; together with costs in the amount of $717.45; for a total Judgment of SIXTEEN THOUSAND THREE HUNDRED NINETY FIVE AND NO/100 ($16,395.00), which sum shall bear interest at the rate of 10% per annum from the date of entry of Judgment until fully paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the bond of Plaintiffs in the amount of $1,000.00 be, and the same hereby is released and ordered returned to Plaintiffs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the sum of $10,043.23, together with all accrued interest thereon, on deposit with the Natrona County Clerk of the District Court be immediately distributed to Plaintiffs in the following manner:

| 12.5% to: | 12.5% to: |
|---|---|
| Mr. Donald Peitersen | Ms. Carol Harriet |
| [address] | [address] |

75% to:
Ms. Christine Lindsey
[address]

Said payments shall be fully credited against the amount of the Judgment herein.

[¶ 17]   On January 26, 2010, Lindsey filed her motion for an order to stay execution on appeal with a supporting affidavit. The district court took no action on that motion. On February 1, 2010, Lindsey filed her notice of appeal.

## STANDARD OF REVIEW

[¶ 18]   In *Lieberman v. Wyoming.com, LLC,* 11 P.3d 353, 356 (Wyo.2000), we recognized the following standard of review when the district court resolves a case by the grant and denial of cross motions for summary judgment, as in this case:

The district court resolved this case by the grant and denial of cross motions for summary judgment. Generally, a denial of a motion for a summary judgment is not an appealable final order. *Wolter v. Equitable Resources Energy Co., Western Region,* 979 P.2d 948, 953 (Wyo.1999); *Matter of Adoption of MSVW,* 965 P.2d 1158, 1161 (Wyo.1998). However, there are exceptions to this rule. One exception we have adopted is that, when the district court grants one party's motion for a summary judgment and denies the opposing party's motion for a summary judgment and the district court's decision completely resolves the case, both the grant and the denial of the motions for a summary judgment are subject to appeal. *Matter of Adoption of MSVW,* 965 P.2d at 1162.

The parties in this case filed opposing motions for a summary judgment. Although Lieberman's motion was one for a partial summary judgment, the district court appears to have disposed of the entire case in a single order by denying Lieberman's motion and granting Wyoming.com's motion. We will, therefore, afford review of the entire matter, including the denial of Lieberman's motion. *Matter of Adoption of MSVW,* 965 P.2d at 1162.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Snyder v. Lovercheck,* 992 P.2d 1079, 1083 (Wyo.1999). We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Id.; 40 North Corp. v. Morrell,* 964 P.2d 423, 426 (Wyo.1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.* If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh,* 986 P.2d 153, 155 (Wyo. 1999); *Downen v. Sinclair Oil Corp.,* 887 P.2d 515, 519 (Wyo.1994). We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Roberts v. Klinkosh,* 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.,* 934 P.2d 1273, 1275 (Wyo.1997).

## DISCUSSION

[¶ 19]   The parties agree that a constructive trust is an equitable remedy imposed to compel a person who unfairly possesses a property interest to hold that property interest in trust for the person for whom, in equity and in good conscience, it should be held. *Baker v. Ayres & Baker Pole & Post, Inc.,* 2007 WY 185, ¶ 16, 170 P.3d 1247, 1251–52 (Wyo.2007). They also agree that the elements of a constructive trust are: (1) a promise, either express or implied; (2) a transfer made in reliance upon that promise; and (3) unjust enrichment. *Id.* The parties do not agree, however, on whether the evidence submitted in support of their respective motions for summary judgment established those elements. According to the district court's decision letter, the governing document is the unambiguous 1989 Agreement between Helen Peitersen and Janet Sue Lohry, Lindsey's mother. The district court read that agreement to mean that Helen Peitersen transferred her

ownership of her sixty-seven shares of stock to Janet Sue Lohry with the agreement that Janet Sue Lohry shall distribute the dividends to various people, including the Appellees and that that agreement gave them legally protected interests as third-party beneficiaries. The problem with this reasoning that Lindsey has identified, and with which we agree, is that Helen Peitersen did not transfer her sixty-seven shares to Janet Sue Lohry in this 1989 Agreement. She had transferred those shares to Janet Sue Lohry almost eighteen months earlier with no conditions or obligations attached. There is no genuine issue of material fact on that important point. There is no evidence that Janet Sue Lohry promised Helen Peitersen on August 14, 1987, when Helen Peitersen transferred her shares to Janet Sue Lohry on that date, that she would distribute dividends to their several relatives. There is no evidence that Helen Peitersen transferred her shares on that date in reliance of such a promise from Janet Sue Lohry. For these reasons, the district court's summary judgment in Appellees' favor cannot stand.

[¶ 20] We are aware, of course, of the events that occurred following the 1989 Agreement, including Janet Sue Lohry's execution of her will on September 30, 1996, which by its provisions made Janet Sue Lohry's bequest of her shares to Lindsey subject to the 1989 Agreement; Janet Sue Lohry's execution of two handwritten documents dated August 1, 1997; Janet Sue Lohry's March 9, 2001, letter to the Company's attorney regarding the transfer of her shares to Lindsey; the Company attorney's March 23, 2001, letter to Janet Sue Lohry regarding that transfer and Janet Sue Lohry's death on that date; the issuance of the stock certificate to Lindsey on April 2, 2001; the probate of Janet Sue Lohry's 1996 will from 2001 to 2003; and Lindsey's not finding the 1989 Agreement and Janet Sue Lohry's August 1, 1997, writings until 2007 or 2008. There very well may be other legal issues concerning the import of all those events between Appellees, Lindsey, and the other relatives mentioned in the various documents in this voluminous record. But those possible issues if they exist are not before this Court as they were not discretely raised, appropriately briefed, and decided below. The only decision by the district court below is that addressed in its decision letter, which we reverse. That court decided no other discrete issues, and we do not.

[¶ 21] Reversed and remanded.