# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 141

OCTOBER TERM, A.D. 2013

*November 12, 2013*

EVELYN DIFELICI, f/k/a EVELYN
BARNES,

Appellant
(Plaintiff),

v.                                                      S-13-0046

CITY OF LANDER,

Appellee
(Defendant).

*Appeal from the District Court of Fremont County*
*The Honorable Norman E. Young, Judge*

*Representing Appellant:*
    Sky D Phifer, Phifer Law Office, Lander, Wyoming

*Representing Appellee:*
    Thomas A. Thompson of MacPherson, Kelly & Thompson, LLC, Rawlins,
    Wyoming

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, Justice.

[¶1]    Appellant Evelyn DiFelici was injured when she fell after stepping into a hole drilled in the gutter of a street in the City of Lander.  She sued the City, claiming that it was negligent in the operation of a public utility or service, and also that she was entitled to recover under a specific statute rendering cities and towns liable for injuries resulting from excavations or obstructions which make streets or sidewalks unsafe.

[¶2]    The district court granted the City's motion for summary judgment.  We affirm.

## ISSUES

[¶3]    Appellant raises these issues, which we restate as follows:

> 1.    Did the City's failure to replace a grate over the drain inlet fall within the waiver of immunity for negligence of public employees in the operation of public utilities and services under Wyoming Statute § 1-39-108(a)?
>
> 2.    Does Wyoming Statute § 15-4-307 provide a statutory basis on which Appellant was potentially entitled to recover from the City?[1]

## FACTS

[¶4]    The facts of this case are largely undisputed, and in this review of an order granting summary judgment, we will view them in the light most favorable to Appellant.  Evelyn DiFelici's dog had a difficult recovery after delivering a litter of puppies, and the veterinarian caring for the dog recommended that she walk her pet every three hours.  On April 27, 2009, Ms. DiFelici was walking her dog as recommended after dark.  The sidewalk did not continue onto her neighbor's property, and Ms. DiFelici stepped off into Washakie Street for that reason, as well as to keep her ailing dog away from the neighbor's schnauzer.  She walked on the relatively flat concrete gutter until she stepped into something and fell.  She injured her hip and back in the fall.

[¶5]    The parties agree that Ms. DiFelici fell when she stepped into a three-inch diameter hole in the gutter adjacent to the curb.  There is no dispute that until 1989, runoff water from the street backed up into the yard of the house on the corner near where Ms. DiFelici fell, much to the annoyance of the property owner.  After the owner

---

[1] Appellant also identified whether the City of Lander's failure to replace the grate over the drainage opening constituted negligence in the operation of a surface water drainage system as an issue.  We address this question in conjunction with her argument concerning the Claims Act waiver relating to negligence in operation of a public utility or service, and thus have not listed it separately.

complained, two City of Lander employees drilled a three-inch hole which drained water into an irrigation ditch or concrete pipe under the street.

[¶6]    The hole was originally covered by a grate fabricated by the employees who drilled it.  The City of Lander's current street maintenance superintendent became aware of the hole some time before 1995, and recalled that it was not covered by a grate from then until after Ms. DiFelici fell.  The City covered the hole with a grate after she was injured.

## STANDARD OF REVIEW

[¶7]    Our standard of review of orders granting summary judgment has been stated often and consistently:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards.  [*Snyder v. Lovercheck*, 992 P.2d 1079, 1083 (Wyo. 1999)]; *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo. 1998).  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  *Id*.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.  *Id*.  If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh*, 986 P.2d 153, 155 (Wyo. 1999); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 519 (Wyo. 1994).  We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling.  *Roberts v. Klinkosh*, 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.*, 934 P.2d 1273, 1275 (Wyo. 1997).

*Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011).  We can affirm an order granting summary judgment on any basis appearing in the record.  *Magin v. Solitude Homeowner's Inc.*, 2011 WY 102, ¶ 20, 255 P.3d 920, 927 (Wyo. 2011) (citing *Walker v. Karpan*, 726 P.2d 82, 89 (Wyo. 1986)).

2

## DISCUSSION

### The Governmental Claims Act Issues

#### A. *The Parties' Positions on the Claims Act and Its Exceptions*

[¶8] Wyoming's Governmental Claims Act has been described as a "closed ended" tort claims act because it generally grants immunity to governmental entities and public employees, waiving that immunity only through specific statutory exceptions. Wyo. Stat. Ann. § 1-39-104(a) (LexisNexis 2013); *Rice v. Collins Commc'n, Inc.*, 2010 WY 109, ¶ 15, 236 P.3d 1009, 1016 (Wyo. 2010); *Sponsel v. Park Cnty.*, 2006 WY 6, ¶ 18, 126 P.3d 105, 110 (Wyo. 2006); Lawrence J. Wolfe, Comment, *Wyoming's Governmental Claims Act: Sovereign Immunity with Exceptions—A Statutory Analysis*, XV Land & Water L. Rev. 619, 621, 623 (1980). Appellant must therefore identify an exception to the Act's grant of immunity in order to recover from the City. She relies upon § 1-39-108, which provides in pertinent part as follows:

> A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of public utilities and services including gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation.

Wyo. Stat. Ann. § 1-39-108(a) (LexisNexis 2013).

[¶9] She argues that the hole which let runoff water flow into the irrigation pipe under Washakie Street was part of a liquid waste collection or disposal system, that it was therefore part of a public service or utility, and that the City was negligent in the operation of the system because it knowingly allowed the hole to remain uncovered for many years. For purposes of reviewing the district court's grant of summary judgment, we accept as true Ms. DiFelici's contention that a reasonable jury could find the City negligent based on its failure to cover the hole in question after it became aware of the potential hazard.

[¶10] The City bases its defense on another specific portion of the Claims Act. In 1982, this Court held that a former provision of the Act which waived immunity for negligence in the maintenance of "public facilities" applied to claims for negligent maintenance of a state highway. *State v. Stovall*, 648 P.2d 543, 548–49 (Wyo. 1982) (interpreting § 1-39-111). In 1986, the Wyoming Legislature repealed § 1-39-111 and enacted § 1-39-120, which currently provides as follows:

(a) The liability imposed by W.S. 1-39-106 through 1-39-112 [exclusions to immunity] does not include liability for damages caused by:

(i) A defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area;

(ii) The failure to construct or reconstruct any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; or

(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

Wyo. Stat. Ann. § 1-39-120 (LexisNexis 2013).[2]

[¶11] The City argues that the purpose of the hole in the gutter in Washakie Street was to drain water from the street, and that a negligent failure to install a grate over it would fall within the immunity conferred by subsection (iii). It also denies that drilling a hole that allowed runoff to run from the street into an irrigation ditch relates to the operation of a public utility or service, and further argues that even if it did, the grate was only needed to make the street safe for pedestrians because the drain adequately removed water without it.

[¶12] The district court agreed with the City and granted summary judgment. It found that even if Ms. DiFelici was correct that drilling a hole in the street and into an irrigation ditch might somehow amount to a public service under § 1-39-108, the placement of a grate had nothing to do with that function, as the uncovered hole drained the street without the grate. The implication of this ruling is that the grate was used to keep the street safe, and that the claims based on its absence related to maintenance of the public street, for which Ms. DiFelici could not recover under the specific immunity of § 1-39-120(a)(iii). We must decide how the competing provisions of the Claims Act apply in this case.

**B.    *Scope of § 1-39-108 exception to immunity***

[¶13] We begin by analyzing whether § 1-39-108 waives immunity for a claim like that involved in this case.

---

[2] This statute was held to be constitutional in *White v. State*, 784 P.2d 1313, 1322 (Wyo. 1989).

4

In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is de novo. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.

Only if we determine the language of a statute is ambiguous will we proceed to the next step, which involves applying general principles of statutory construction to the language of the statute in order to construe any ambiguous language to accurately reflect the intent of the legislature. If this Court determines that the language of the statute is not ambiguous, there is no room for further construction. We will apply the language of the statute using its ordinary and obvious meaning.

Whether a statute is ambiguous is a question of law. A statute is unambiguous if reasonable persons are able to agree as to its meaning with consistency and predictability, while a statute is ambiguous if it is vague or uncertain and subject to varying interpretations.

*Rock v. Lankford,* 2013 WY 61, ¶ 19, 301 P.3d 1075, 1080–81 (Wyo. 2013) (quoting *Redco Const. v. Profile Props., LLC,* 2012 WY 24, ¶ 26, 271 P.3d 408, 415–16 (Wyo. 2012)).

[¶14] Appellant argues that § 1-39-108 applies because it refers to water and to liquid waste collection and disposal. We reject the contention that the reference to "water" somehow encompasses runoff from rain or melting snow. The statutory phrase is "in the operation of public utilities and services including gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation." § 1-39-108.

[¶15] The principle of *ejusdem generis* tells us that "general words, [associated with] an enumeration of words with specific meanings, should be construed to apply to the same general kind or class as those specifically listed." *RME Petroleum Co. v. Wyo. Dep't of Revenue*, 2007 WY 16, ¶ 46, 150 P.3d 673, 689–90 (Wyo. 2007) (quoting *Powder River Coal Co. v. Wyo. State Bd. of Equalization*, 2002 WY 5, ¶ 19, 38 P.3d 423, 429–30 (Wyo. 2002)). The proximity of the words "gas" and "electricity" indicates that the "water" referred to is domestic water supplied by some governmental entities, including municipalities like the City of Lander, and not a reference to runoff water. We believe the plain language of the statute to be sufficiently clear that no interpretation is required.

[¶16] The phrase "liquid waste collection or disposal" is not so readily understood. Appellant suggests that the phrase is broad enough to include what are commonly called storm sewers, systems of pipes and canals used to drain runoff water, which is also called storm water (see discussion below).

[¶17] The record on this point is somewhat perplexing. It is undisputed that City of Lander employees drilled into what is described as an irrigation ditch, but that the "ditch" really conveyed water under city streets through a concrete pipe. Based on the limited testimony in the record, the Wilson Ditch into which the hole was drilled carries water from an unidentified source to lands "on the other side" of Lander. The record suggests that the ditch is not owned by the City, as its owners had evidently expressed concern that the City might ask them to shut their headgate if the pipe was carrying more than its capacity.[3] The district court's decision also indicated that the pipe was "a private irrigation ditch."

[¶18] It is undisputed that the hole drilled by city employees simply drained water which would otherwise have accumulated in a low spot in Washakie Street into an irrigation system owned by someone else, rather than directing it into a city-owned storm sewer system. However, the record leaves room for the possibility that the irrigation ditch was a de facto part of the City's surface drainage system.

[¶19] Viewing that inconclusive evidence in the light most favorable to Appellant, we must then determine what the legislature meant by the phrase "liquid waste collection or disposal" in § 1-39-108. The New Mexico Tort Claims Act was available to the

---

[3] It is not clear whether the ditch owner was concerned that the water from the pipe could back up into holes drilled into it by the City if it was flowing at full capacity, but that seems a logical possibility.

Wyoming Legislature when it drafted and enacted the Wyoming Governmental Claims Act, and many of the provisions of Wyoming's Act are similar to those in the New Mexico Act. *City of Torrington v. Cottier*, 2006 WY 145, ¶ 12 n.5, 145 P.3d 1274, 1279 (Wyo. 2006); Wolfe, *supra*, at 623.

[¶20] The New Mexico Tort Claims Act contains a provision similar to § 1-39-108:

> The immunity granted pursuant to Subsection A of Section 4 [N.M. Stat. Ann. § 41-4-4] of the Tort Claims Act does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the ***operation of the following public utilities and services***: gas; electricity; water; solid or ***liquid waste collection or disposal****;* heating; and ground transportation.

N.M. Stat. Ann. § 41-4-8(A) (West 2013) (emphasis added).

[¶21] The New Mexico Supreme Court originally interpreted this provision to apply to systems intended to drain water from rainfall or snowmelt. In *City of Albuquerque v. Redding*, 605 P.2d 1156 (N.M. 1980), a bicyclist was injured when her front tire slipped through a drain grate, throwing her off her bike. The New Mexico Act also specifically granted governmental entities immunity for "a defect in plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk, or parking area . . . ." N.M. Stat. Ann. 41-4-11(B). The City of Albuquerque argued that it was immune from suit based on that section, as the City of Lander does based on § 1-39-120.

[¶22] The New Mexico Supreme Court held that the section waiving immunity for the public service of collecting or disposing of liquid waste was more specific than the general statute relating to defects in the plan or design of streets, and that it therefore applied. *Redding*, 605 P.2d at 1158. It also held that the grate through which water drained into the storm sewer system was part of a system for the collection or disposal of runoff water, which it evidently considered to be "liquid waste," although it arrived at its conclusion without detailed analysis. *Id*.

[¶23] The New Mexico Court of Appeals reluctantly followed this binding precedent in allowing a property damage claim based on overflow from an arroyo owned by the city because it was part of a storm drainage system. *Espander v. City of Albuquerque,* 849 P.2d 384, 389 (N.M. Ct. App. 1993). It expressed serious reservations as to whether runoff could be considered "waste" given the definition of that term in other statutes, but felt bound by *Redding* to conclude that it was. *Id.* at 387–89.

7

[¶24] The New Mexico Supreme Court revisited the issue of whether runoff water is "liquid waste" under its Tort Claims Act in *Bybee v. City of Albuquerque,* 896 P.2d 1164, 1165 (N.M. 1995). The appellant attempted to cross a concrete ditch operated by a subdivision of the City of Albuquerque, slipped on algae, and shattered his ankle. He claimed an exception to the general immunity of the Tort Claims Act based on the New Mexico statute quoted above and the *Redding* case.

[¶25] The court overruled *Redding* and *Espander*, describing its holding in *Redding* as "disingenuous" because it ignored the distinction between Albuquerque's sewage and surface water drainage systems. *Bybee*, 896 P.3d at 1166. It quoted New Mexico statutes defining the term "waste" as "sewage, industrial wastes or any other liquid, gaseous or solid substance which may pollute any waters of the state." *Id*. It noted that by statute "sewer systems" were a combination of means to conduct wastes to an ultimate point for treatment or disposal by means to assure they did not contaminate the state's water supplies. *Id*. at 1166–67.

[¶26] Storm runoff, on the other hand, drained through a series of diversion devices into the Rio Grande River. It was not treated and was used to replenish the state's water reserves. *Id*. at 1167. Although storm runoff picks up silt and debris from the streets, it could not be called liquid waste on that account—New Mexico's Water Quality Control Commission would not under its statutory mandate allow something that could be considered "waste" to drain untreated into a major river system. *Id*.

[¶27] The court noted that it might seem contradictory for the legislature to waive immunity for operation of a sewer system but to not waive it for a storm water runoff diversion system. It found the distinction rational because water is of constitutional significance in New Mexico, because the legislature may have wanted to encourage the construction of diversion channels, and because of the potentially unlimited risk of property damage and injury or death which can result from flash flooding. *Id*.

[¶28] We find the New Mexico Supreme Court's approach persuasive, and therefore examine our own statutes to determine whether the legislature intended to include storm water runoff in the phrase "liquid waste." Wyoming Statute § 35-11-103(c)(ii) defines "wastes" exactly as the New Mexico statute construed in *Bybee* did: "'Wastes' means sewage, industrial waste and all other liquid, gaseous, solid, radioactive, or other substances which may pollute any waters of the state." Wyo. Stat. Ann. § 35-11-103(c)(ii) (LexisNexis 2013). The definitions of "sewerage system," "treatment works," and "disposal system" all describe means of treating wastes so that they do not pollute the ground or surface waters of Wyoming. § 35-11-103(c)(iii), (iv), and (v). "Pollution" is defined as allowing wastes and other substances which degrade water into any waters of the state. § 35-11-103(c)(i). Pollution of the waters of the state is prohibited. § 35-11-301.

[¶29] On the other hand, Wyoming Statute § 16-10-103(a) specifically authorizes any governing body to design, plan, construct, reconstruct, acquire, operate, improve, extend, or maintain a "surface water drainage system, sometimes referred to as a storm water drainage system." Wyo. Stat. Ann. § 16-10-103(a) (LexisNexis 2013). The term "storm water" or "stormwater" is commonly used to refer to water resulting from rainfall or snowmelt. *See, e.g.*, 33 U.S.C. § 1362(14) (2013); Wyo. Stat. Ann. §§ 18-12-112(a)(xii); 18-16-107(a)(xiv); 35-11-1415(a)(ix)(F) (LexisNexis 2013); *Hughey v. JMS Dev. Corp.,* 78 F.3d 1523, 1532 (11th Cir. 1996) (in which the court wondered whether a federal district court injunction prohibiting the discharge of stormwater required the defendant to stop the rain).[4]

[¶30] We believe that if the legislature had intended to waive immunity for the operation of a system used to carry storm water or runoff, it would have used those terms, or the term "surface water," rather than "liquid waste." We also recognize that there are good reasons to distinguish between waste carried by a sewer system and runoff from rain or snowmelt. As in New Mexico, water is of constitutional significance in Wyoming. *See* N.M. Const. art. 16; Wyo. Const. art. 8; (establishing water as property of the state, creating a board of control and state engineer, and establishing priority of appropriation as creating the better right to water). In a hotly contested appeal, a member of this Court made the following uncontroversial observation:

> Water is the lifeblood of Wyoming. It is a scarce resource
> which must be effectively managed and efficiently used to
> meet the various demands of society.

*In Re General Adjudication of All Rights to Use Water in Big Horn River System*, 835 P.2d 273, 279 (Wyo. 1992) (plurality opinion).

[¶31] We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law when it enacts a statute. *Redco Const.*, ¶ 37, 271 P.3d at

---

[4] Runoff from rain or snowmelt can pick up waste and carry it to surface or ground waters, and citizens and governmental entities can be required to take steps to prevent runoff containing those pollutants from entering the state's waters. *See, e.g.*, Wyo. Rules and Regulations, Dep't of Envtl. Quality, Water Quality Div., ch. 2, §§ 3(a)(xxxviii), (lvi), and (lxxxix), § 6, and App. N(h)(ii)(A)(I)(2.)a. and (h)(ii)(A)(II); 33 U.S.C. § 1342(l) and (p), § 1362(6), (12), (14), (19); Ronald I. Mirvis, Annotation, *What Constitutes "Point Source" of Pollution Subject to Control by Provisions of Water Pollution Control Act, as Amended (33 U.S.C.A. § 1362(14))*, 52 A.L.R. Fed. 885, § 3 (1981 & 2013 Cum. Supp.). The United States Environmental Protection Agency has promulgated specific storm water runoff regulations governing separate storm sewer systems in large and small cities. These rules are intended to reduce contamination of surface and ground water from oil and grease from roadways, pesticides from lawns, sediment from construction sites, and trash of various kinds. *See, e.g,* Stormwater Phase II Final Rule, Small MS4 Stormwater Program Overview, EPQ 833-F-00-002 (January 2000, revised December 2005); 40 C.F.R. Part 122, Subpart B. The complex law governing these kinds of issues is not involved in this appeal.

418.  It would certainly be rational for the legislature to encourage governmental entities to develop means to return surface water to natural watercourses and aquifers by limiting their liability for the operation of those systems.  Moreover, we need not look far afield or far back in history to appreciate the overwhelming liability which could result from claims that a surface water drainage system did not operate properly.[5]  We have no doubt that the legislature was aware of these kinds of risks when it enacted § 1-39-108 over thirty years ago.

[¶32]  We find that the waiver of immunity in § 1-39-108 does not extend to systems intended to remove storm or runoff water, which deprives Appellant of an exception to the immunity conferred on the City by the Claims Act.  We also agree with the district court that the hole the City drilled was used to drain water from the street into an irrigation ditch, and that it was therefore maintenance to compensate for weather conditions under § 1-39-120(a)(iii).[6]  Appellant's claim is therefore barred both by the absence of an applicable exception to immunity and a specific statutory immunity.

**Applicability of § 15-4-307**

[¶33]  Appellant also claims that she is entitled to pursue her claim under Wyoming Statute § 15-4-307.  That statute provides as follows:

> Any person who renders a street insufficient or unsafe for travel by any excavations or obstructions not authorized by law or ordinance, or is negligent in the management of any authorized excavation or obstruction, or fails to maintain proper guards or lights is liable for all damages recovered by any person injured as a result of the obstruction or negligence.  No action may be maintained against the city or town for damages unless the person or persons creating the condition are joined as parties defendant.  In case of judgment against

---

[5] The Wyoming State Climate Office, housed at the University of Wyoming, describes flooding as "one of the more significant natural hazards in the state." Wyoming Floods, *Water Resources Data System*, http://wyofloods.wrds.uwyo.edu/ (last visited Nov. 4, 2013).  The August 1985 flood in Cheyenne, for example, caused twelve deaths and $65 million in damage. *Id.*  The more recent Colorado floods in September 2013 cost about $2 billion, and much of the damage to homes and businesses could be uninsured.  Chris Isidore, *Colorado Floods: Costly and Often Uninsured*, CNN Money, http://money.cnn.com/2013/09/19/news/ economy/colorado-flood-damage/index.html (Sept. 19, 2013).

[6] The parties briefed and argued the question of whether replacement of a grate is "maintenance" or "operation" of a public utility or service.  Appellant cited the City of Lander's Urban Storm Drainage System standards and specifications and a city ordinance, both of which require grates as part of the City's storm drainage system.  We do not agree that mention of grates in these documents causes them to be part of a public service or utility, but do not discuss the issue further given our interpretation of § 1-39-108(a).

10

the defendants, execution shall at first issue only against the defendant causing the insufficiency or danger, and the city or town is not required to pay the judgment until that execution is returned unsatisfied. If the city or town pays the judgment, it is the owner thereof and may enforce its payment from the other defendants. The city or town is also entitled to execution against them and to take such other proceedings as judgment creditors are entitled to take.

Wyo. Stat. Ann. § 15-4-307 (LexisNexis 2013).

[¶34] Ms. DiFelici argues that the hole drilled by the City was an excavation, and that she was therefore entitled to recover under this statute regardless of the limitations contained in the Claims Act. The City argues that the statute does not apply to the actions of its employees, but instead only to the actions of third parties. It also argues that under Wyoming Statute § 15-4-308, actions against a city or town may only be brought as permitted by the Governmental Claims Act, and that therefore Ms. DiFelici's claim under this statute was also barred. The district court did not address these issues, but instead granted summary judgment because it found that the three-inch hole in the street was not an excavation under § 15-4-307.

[¶35] It is tempting to decide this issue on the size of the hole in Washakie Street rather than to construe the mysterious § 15-4-307, but its meaning is an issue we must address. Section 15-4-307 was enacted in 1923, although it was amended with grammatical changes in 1965. 1923 Wyo. Sess. Laws ch. 74, § 73; 1965 Wyo. Sess. Laws ch. 112, § 274. It has not been amended since, although it has been renumbered. The Court can only speculate that it was intended to statutorily enhance the common law rule that a municipality has a non-delegable duty to maintain its streets and sidewalks, and that it may therefore be liable for the act of a third party whose excavation or failure to warn causes injury to motorists, passengers or pedestrians. *See, e.g.*, 40 Am. Jur. 2d *Highways, Streets, and Bridges* § 372 (2008); Restatement (Second) of Torts § 418 (1965); 4 John Martinez, *Local Government Law* § 27:7 (2d ed. 2013); 19 Eugene McQuillan, *Municipal Corporations* §§ 54:3, 54:4, and 54:11 (3d ed. 2004) (explaining the common law rule, as well as statutes imposing municipal liability under similar circumstances in some states); *Cause of Action against Municipality for Injury Caused by Defective Sidewalk*, 21 Causes of Action 2d 71 (2003). The statute makes cities or towns guarantors if a contractor or other person cannot pay a judgment based upon it. It has no express requirement that the city or town be negligent in failing to discover the condition, and this Court has never had occasion to determine whether such a requirement is implied or not.

[¶36] The predecessor of § 15-4-308 was also enacted in 1923, and it was amended with minor grammatical changes to provide as follows in 1965:

11

> No action may be maintained against the city or town
> on account of injuries received by means of any defect in the
> condition of any bridge, street, sidewalk or thoroughfare,
> unless it is commenced within one (1) year from the
> happening or the injury, nor unless notice is first given in
> writing to the manager or the clerk within thirty (30) days of
> the injury or damage. The notice shall state the place and
> time of the injury and that the person injured will claim
> damages of the city or town. The notice is not required when
> the person injured is bereft of reason.

1923 Wyo. Sess. Laws ch. 74, § 74; 1965 Wyo. Sess. Laws ch. 112, § 275. The original statute preceded enactment of the Governmental Claims Act by many years, and it was evidently intended to provide a claim notice procedure and statute of limitations for claims made under what is now § 15-4-307. The section was originally entitled "Actions Against City for Injuries." The title changed to "Limitation of actions against city or town for injuries; notice of claim" in the 1965 statutes, although we are unable to relate that change to any law passed by the legislature. Wyo. Stat. § 15.1-275 (Michie 1965).

[¶37] The statute was amended to read as it does now in the same legislation that created the Claims Act in 1979:

> No action may be maintained against the city or town on
> account of injuries received by means of any defect in the
> condition of any bridge, street, sidewalk or thoroughfare
> except as provided by W.S. 1-39-101 through 1-39-119.

1979 Wyo. Sess. Laws ch. 157, § 2, *codified at* Wyo. Stat. 15-4-246 (Michie 1980). The title was shortened to "Limitation of actions against city or town for injuries" when the amendment was enacted. *Id*. The title suggests that the purpose of the amendment may have been, at least in part, to replace the old limitations and claim provisions with those contained in the Claims Act.[7] *See* Wyo. Stat. Ann. §§ 1-39-113, 114 (LexisNexis 2013) (establishing claims procedures and a statute of limitations for governmental claims).[8]

---

[7] Wyoming Statute § 8-1-105 provides that headnotes inserted in a bill by the Legislative Service Office are not part of the substantive law of the enactment. We have nonetheless held that a statutory title or headnote may be useful in interpreting a statute. *City of Cheyenne v. Bd. of Cnty. Comm'rs of Cnty. of Laramie*, 2012 WY 156, ¶ 15, 290 P.3d 1057, 1061 (Wyo. 2012) (citing *Counts v. State*, 2008 WY 156, ¶ 18, 197 P.3d 1280, 1285 (Wyo. 2008); *Patel v. CWCapital Asset Mgmt., LLC*, 2010 WY 147, ¶ 7, 242 P.3d 1015, 1018 (Wyo. 2010)).

[8] Ms. DiFelici's complaint alleged compliance with the claim requirements of the Governmental Claims Act, including submission of a claim under penalty of perjury. The parties later stipulated that the case could proceed against the City of Lander.

[¶38] In 2007, the section was renumbered as § 15-4-308. 2007 Wyo. Sess. Laws ch. 124, § 1. Section 15-4-308 has not been amended to refer to § 1-39-120, which confers express immunity for street maintenance, although that section was added in 1986. 1986 Wyo. Sess. Laws ch. 89, § 1. The 1986 legislation adopting § 1-39-120 amended the definition of "this act" to include § 1-39-120, but § 15-4-308 was never amended to simply refer to the Claims Act in its entirety.

[¶39] As already explained, this Court held in *Stovall* that governmental entities could be held liable for failing to properly maintain streets and highways. That holding was legislatively overruled by the enactment of § 1-39-120 and the repeal of § 1-39-111 in 1986. 1986 Wyo. Sess. Laws ch. 89, § 3. Section 15-4-307 was not modified or repealed during the 1986 or any later legislative session.

[¶40] We can only conclude that the legislature intended the Claims Act to coexist with § 15-4-307. It had a number of opportunities to repeal § 15-4-307 but did not do so. It even modified § 15-4-308, which provided the claims procedure and limitations period for § 15-4-307, to refer to §§ 1-39-101 through 119 of the Claims Act. We have held that repeals by implication are not favored, and the fact that the legislature modified § 15-4-308 indicates that it did not intend to repeal § 15-4-307. *See Mathewson v. City of Cheyenne*, 2003 WY 10, ¶ 11, 61 P.3d 1229, 1233, (Wyo. 2003) ("[R]epeals by implication are not favored and will not be indulged if there is any other reasonable construction. One asserting implied repeal [must show] beyond question that . . . its later legislative action evinced an unequivocal purpose of affecting a repeal." (quoting *Shumway v. Worthey*, 2001 WY 130, ¶ 15, 37 P.3d 361, 367 (Wyo. 2001))). *See also Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 504, 56 S. Ct. 349, 352, 80 L. Ed. 351 (1936).

[¶41] The City argues that § 15-4-307 applies only when a person or entity other than a governmental entity or its public employees creates an excavation or obstruction. We agree. The plain language of the statute supports this construction. It requires the person or persons creating the obstruction to be joined in order to maintain an action against a city or town, thereby indicating that someone other than a city employee must be responsible for the obstruction. It provides that a city or town does not have to pay a judgment until an execution against the defendant causing the insufficiency or damage is returned unsatisfied, and that the city or town is entitled to execute against the persons or entities creating the condition if it pays a judgment against them.

[¶42] As already noted, we must read § 15-4-307 *in pari materia* with the Claims Act. The Claims Act requires a governmental entity to defend and indemnify a public employee who negligently causes injury while acting within the scope of his or her duties. Wyo. Stat. Ann. § 1-39-104(b), (c), and (d) (LexisNexis 2013). It does not allow the governmental entity to recover from the negligent employee if it is forced to pay a judgment. The Claims Act is therefore inconsistent with § 15-4-307.

13

[¶43] Moreover, although § 15-4-308 does not refer to § 1-39-120, which expressly confers immunity relating to street maintenance, the legislature repealed § 1-39-111, on which this Court relied in finding an exception to the Act's immunity in *Stovall v. State*. There would therefore be no exception to immunity for street maintenance by public employees under the Claims Act, even if § 15-4-308 does not expressly incorporate § 1-39-120.

[¶44] We presume the legislature to act with full knowledge of the law, and so we must conclude that it knew of § 15-4-307 and chose to retain it, even specifically amending § 15-4-308 when it enacted the Claims Act. *Redco Const.*, ¶ 37, 271 P.3d at 418. The irony of this ruling is not lost upon us. Although the legislature has gone to considerable lengths to immunize governmental entities for their own activities in maintaining streets and highways by passing § 1-39-120 of the Claims Act, we here conclude that it has on the other hand decided to allow injured parties to recover from cities and towns for the acts of judgment-proof third persons or entities over whom they may have no control. However, we are not free to add to legislation under the guise of interpretation, but must instead take statutes as we find them. *Starrett v. State*, 2012 WY 133, ¶ 9, 286 P.3d 1033, 1037 (Wyo. 2012) (citation omitted).

[¶45] An interesting summary of the types of defects which have been found to be both sufficient and insufficient to confer liability on municipalities may be found in 19 McQuillan, *supra*, §§ 54:86–54:88. Because we conclude that § 15-4-307 does not apply to the negligence of public employees of cities or towns, it is unnecessary for us to determine whether the three-inch hole in the gutter in Washakie Street could be considered an "excavation" under that statute.

## CONCLUSION

[¶46] The term "liquid waste" in Wyoming Statute § 1-39-108(a) does not include runoff or storm water, and there is thus no exception to immunity available to the Appellant. We also find that the hole drilled in the gutter of Washakie Street to drain water into a privately-owned irrigation ditch was maintenance of a street to compensate for weather conditions, and that the specific immunity of § 1-39-120 therefore also bars her claim. Finally, we conclude that Wyoming Statute § 15-4-307 does not create a cause of action based on the negligence of public employees of cities and towns for excavations or obstructions of streets. We therefore affirm.

14